UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UTHAIWAN WONG-OPASI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:05-0493 |
| v. | ) | JUDGE ECHOLS |
| | ) | |
| NATIONAL BANK OF COMMERCE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Presently pending before the Court is the Report and Recommendation of the Magistrate Judge (Docket Entry No. 19), Defendant's Motion for Summary Judgment (Docket Entry No. 13), and Defendant's Motion to Compel Plaintiff to Appear at Deposition and For Sanctions (Docket Entry No. 9). Plaintiff *pro se* failed to respond to either of Defendant's motions, and she has not filed any objections to the Report and Recommendation. The copy of the Report and Recommendation sent to Plaintiff by certified mail at her last known address was returned to the Court marked "Unclaimed." (Docket Entry No. 20.)

Plaintiff's last filing in this case was a "Notice of Temporary Absence," dated December 13, 2005, in which Plaintiff stated she planned to be out of the jurisdiction temporarily for up to one and one-half months for "rehabilitation." (Docket Entry No. 11.) The record discloses no other communication from Plaintiff

1

since mid-December 2005. Although Defendant sought an extension of the January 30, 2006 discovery deadline after receiving Plaintiff's "Notice of Temporary Absence," the deadline passed without extension. Defendant moved for summary judgment on February 27, 2006. Plaintiff did not respond to the summary judgment motion.

The Magistrate Judge recommends dismissing the case for failure to prosecute. The Court declines to accept this recommendation and thus, the Report and Recommendation will be rejected. See 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b).

Dismissal for failure to prosecute is a harsh sanction warranted in extreme situations showing a clear record of contumacious conduct by the plaintiff. Wu v. T.W. Wang, Inc., 420 F.3d 641, 643 (6th Cir. 2005); Harris v. Callwood, 844 F.2d 1254, 1256 (6th Cir. 1988). While Plaintiff has not diligently prosecuted this case, two factors the Sixth Circuit considers in reviewing a dismissal for failure to prosecute is whether the plaintiff was warned that failure to cooperate in litigating the case could lead to dismissal and whether less drastic sanctions were imposed or considered before dismissal was ordered. Nader v. Land, 433 F.3d 496, 501-502 (6th Cir. 2006); Wu, 420 F.3d at 643. Neither of these two factors is satisfied in this case.

The Scheduling Order entered July 26, 2005, (Docket Entry No. 4 at 2) instructed: "A plaintiff's failure to keep the Court informed of his/her current address may result in a recommendation

2

that his action be dismissed for failure to prosecute and for failure to comply with the Court's order." The record does not contain any other warning from the Court to the Plaintiff that failure to prosecute her case by not appearing at a properly-noticed deposition or by otherwise failing to participate in the litigation could result in *sua sponte* dismissal. Thus, Plaintiff was not adequately warned under <u>Wu</u>, <u>Nader</u> and <u>Harris</u>, and the Court will not dismiss the case for failure to prosecute, even though it is clear that Plaintiff has not carried out her responsibilities as a party to litigate this case in a timely manner.

The July 2005 Scheduling Order did warn the Plaintiff "that dispositive motions must be responded to within thirty (30) days unless an extension is granted by the Court, and that failure to respond to the motion and to the statement of facts may result in the Court taking the facts alleged in the matter as true and granting the relief requested." (Docket Entry No. 4 at 3.) Because Defendant has moved for summary judgment and Defendant is entitled to judgment as a matter of law, the Court will resolve the case on the merits.

## I. FACTS

In the verified Complaint, Plaintiff avers that she is a 47-year old female Asian Buddhist who is a permanent resident of the United States. She believes she was qualified for a bank teller position advertised by Defendant National Bank of Commerce ("NBC")

3

on the Internet and on its premises at the Bellevue Branch Office located inside a Kroger grocery store. Approximately three days after Plaintiff first saw the position advertisement, she went to the bank to make transactions and noticed the advertisement was still posted. She asked one of the two NBC representatives on duty if the position had been filled and if it required a business degree or a business background. He replied "no" to both questions. Because the advertisement stated that interested persons should see the manager for an interview, the Plaintiff asked if the manager was in at that time. The individual responded, "I am the manager. Do you have your resume?" The Plaintiff stated, "Yes." The manager asked, "Where is it?" Plaintiff replied: "It's in my car but I will get it after you finish cashing my check." When the Plaintiff returned after less than five minutes, the manager was on the telephone speaking to someone who was not a client of NBC Bank. When he hung up, he informed Plaintiff that the position had already been filled, but that there were three other "floating positions" and that she had to apply for them by contacting directly the Human Resources ("HR") Director in the bank's headquarters downtown.

When Plaintiff asked the manager to fax her resume to the HR Director on her behalf, he refused, saying the line was busy. When Plaintiff asked to speak with the HR Director, the manager responded that the HR Director was out for the day. Plaintiff

4

asked the manager to make a call for her to speak to the HR Department, but he declined her request. When she finally called the HR Director's Office and the HR Department, no one answered her calls. Plaintiff could only leave a message on voice mail. This occurred around 3:00 p.m. Neither of the two NBC representatives on duty at the Bellevue Branch Office honored her request to fax her resume to the HR Department, even though she stayed more than fifteen minutes and the fax line would have cleared during the waiting period.

Plaintiff claims that "[w]hat transpired on that day and afterwards are prima facie evidence of intentional discrimination." (Docket Entry No. 1 at ¶¶ 1-2, 14-32.) Plaintiff attached to her Complaint a copy of her right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC"), but she did not append a copy of her charge of discrimination. Thus, the Court does not know on what ground or grounds of alleged discrimination the Plaintiff relied in presenting her case to the EEOC.

Defendant provides evidence that NBC was acquired by SunTrust Banks, Inc., effective October 1, 2004. (Docket Entry No. 16, Ungerbuehler Aff. at ¶ 1.) Matthew Ungerbuehler is Branch Manager at the Sam Ridley Parkway Money Market Branch of SunTrust Bank. During the relevant period, he was the Branch Manager for the Bellevue Money Market Branch of NBC. (Id. at ¶ 2-3.)

5

Plaintiff entered the bank on a busy Friday afternoon, September 3, 2004, and asked Ungerbuehler questions about a posted job advertisement. There were only two employees available to serve customers. According to Ungerbuehler, he told Plaintiff the posted job opening had already been filled, but that NBC was looking for three, traveling, part-time tellers for other branches.[1] When Plaintiff asked about job qualifications, Ungerbuehler told her that it would be helpful to have banking experience and strong mathematical skills. (Id. at ¶¶ 4-8.)

In accordance with bank policy, Ungerbuehler suggested that Plaintiff apply with NBC online, and told her that after she applied, NBC would contact her if they were interested. According to NBC's policy at that time, branch managers were required to direct potential applicants to either the HR recruiter or to the website. Branch managers did not interview applicants before they applied through HR. (Id. at ¶¶ 8-9.)

Plaintiff stated she did not have Internet access and rejected his suggestions to go to a library, retail copy center, or possibly use a friend's computer. Instead, she replied she had her resume in her car and would be right back. When she returned with her resume, she demanded to be interviewed immediately for the job.

---

[1]Unbeknownst to Ungerbuehler, the floating teller positions had closed shortly before, on August 23, 2004. No associates were hired to fill any of the floating teller positions. Ungerbuehler followed NBC policy in referring Plaintiff to the HR Department or NBC's website. (Docket Entry No. 15, Henson Aff. at ¶¶ 5-8.)

6

Ungerbuehler again explained the position openings were for floating teller positions at other branch locations. He again described the posting process and explained that an interview would not be possible, as this was conducted through NBC's HR Department. (Id. at ¶¶ 10-11.)

Although it was not customary to do so, Ungerbuehler offered to fax Plaintiff's resume to HR, but the line was busy. At that point, he told Plaintiff that she could apply online or speak directly with NBC's HR Department. (Id. at ¶ 12.)

Plaintiff left the branch shortly thereafter and returned again, insisting upon an interview. Ungerbuehler again stated an interview would not be possible and reiterated the application process. As additional verification, he asked a newly-hired associate, Stephanie Flatt, then working at the branch, to describe the recruiting process for Plaintiff. Flatt explained to Plaintiff that she had attended a job fair where she submitted her resume and was later contacted by a Human Resource Recruiter to schedule an interview. (Id. at ¶¶ 13-15.)

Plaintiff asked to see a job description for the open position. Flatt called the HR Department to obtain the job description, but was unable to reach the recruiter. Flatt then provided Plaintiff with the telephone number to the HR Department and Plaintiff left the branch. (Id. at ¶ 16.)

7

Plaintiff returned to the branch for a third time that day, stating she had attempted to contact the HR Department and received voice mail. She again demanded an interview. Ungerbuehler explained an interview was not possible and again explained the application process. Plaintiff left the branch and did not return. (Id. at ¶¶ 17-18.) NBC has no record that Plaintiff applied for any open positions. (Henson Aff. at ¶ 9.)

## II. **STANDARD OF REVIEW**

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if

8

appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. ANALYSIS

**A. Motion for Summary Judgment**

To establish a *prima facie* case of discrimination under Title VII or the Age Discrimination in Employment Act ("ADEA"), Plaintiff must present either direct evidence of intentional discrimination or present facts which create an inference of discrimination. Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1248 (6th Cir. 1995). Plaintiff has not presented any direct evidence of discrimination in her verified Complaint. Thus, this case will follow the familiar burden-shifting formula. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-143 (2000); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-253

9

(1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-803 (1973).

To establish a *prima facie* case of discrimination on any Title VII claim, Plaintiff must show (1) she is a member of a protected class; (2) she applied for and was qualified for a job for which the employer was seeking applicants; (3) despite her qualifications, she was rejected; and (4) after her rejection, the position remained open and the employer continued to seek applicants from persons of Plaintiff's qualifications. McDonnell Douglas Corp., 411 U.S. at 802-803; Seay v. TVA, 339 F.3d 454, 463 (6th Cir. 2003). To carry the first element of the *prima facie* case on an ADEA claim, Plaintiff must show that she was at least forty years of age at the time she applied, and to carry the fourth element she must show that a significantly younger person was hired for the position for which she applied. See Grosjean v. First Energy Corp., 349 F.3d 332, 335 (6th Cir. 2003); Bush v. Dictaphone Corp., 161 F.3d 363, 368 (6th Cir. 1998).

Plaintiff has not responded to NBC's summary judgment motion and thus has not controverted NBC's evidence that Plaintiff did not actually apply for a position, that there were no open positions at the Bellevue Branch on the date Plaintiff indicated an interest in applying for employment, and that NBC did not fill the floating teller positions. See Valent v. Summers, No. 99-3209, 2000 U.S. App. LEXIS 3516 at *11 (6th Cir. Mar. 2, 2000) (observing the existence of a vacant position is a requisite element of the *prima*

10

*facie* case). Moreover, Plaintiff has not presented any evidence that a similarly-situated or younger person outside her protected class received a job or would have received a job. Plaintiff has not established a *prima facie* case of discrimination.

Even if she had done so, only an inference of discrimination arises, see <u>Laderach v. U-Haul of Northwestern Ohio</u>, 207 F.3d 825, 828 (6th Cir. 2000), and the burden of proof then shifts to NBC to articulate a legitimate, non-discriminatory reason for not hiring Plaintiff. Once that reason is identified, the burden shifts back to the Plaintiff to prove that the employer's articulated non-discriminatory reason for its action was merely a pretext for unlawful discrimination. <u>Id.</u> To show pretext, Plaintiff must prove the employer's asserted reason had no basis in fact, the reason did not in fact motivate the adverse employment action, or the reason was insufficient to motivate the adverse employment action. <u>Id.</u> Plaintiff carries the ultimate burden to prove discrimination by a preponderance of the evidence. <u>Talley</u>, 61 F.3d at 1246.

NBC has proffered legitimate, non-discriminatory reasons for its actions. NBC presents evidence that it maintained and enforced an application policy which Ungerbuehler repeatedly asked Plaintiff to follow. Although Plaintiff tried to contact the HR Department and did not reach anyone on a Friday afternoon, the evidence confirms that she did not follow through on her initial contact and submit an application for any position. Additionally, Ungerbuehler did not know the floating teller positions had been closed when he

11

instructed Plaintiff to submit an application at the headquarters office or through the Internet.

Having failed to respond to the summary judgment motion, Plaintiff has not come forward with any evidence that NBC's asserted reasons had no basis in fact, the reasons did not in fact motivate the employment action, or the reason was insufficient to motivate the employment action. Id. Plaintiff's speculation in her Complaint is not sufficient to overcome the summary judgment motion. See Mitchell v. Toledo Hosp., 964 F.2d 577, 585 (6th Cir. 1992). Because Plaintiff has not generated a genuine issue of material fact for trial on the elements of her discrimination case, NBC is entitled to judgment as a matter of law. See Talley, 61 F.3d at 1246.

**B. Motion to Compel and for Sanctions**

On December 2, 2005, NBC filed a motion to compel Plaintiff to attend her deposition after she failed to appear on two prior occasions. NBC supported its motion with documentation that it had properly noticed Plaintiff's deposition on two different dates using U.S. mail and electronic mail, each time incurring the cost of a court reporter when Plaintiff did not attend. (Docket Entry No. 10, Shew Aff.) After the first no-show, counsel for NBC tried to contact Plaintiff by telephone, but the person answering stated the number reached was for a "Mother's Day Out" program. Counsel then tried a mobile telephone number Plaintiff had given to the

12

EEOC, but the person who answered that call stated counsel had reached a wrong number.

Following the second no-show, counsel called the same telephone numbers. The person answering the first number again verified that the number reached was for a "Mother's Day Out" program and Plaintiff could not be reached there. The mobile number appeared to be out of service. Plaintiff did not respond to the motion to compel.

In light of the resolution of NBC's summary judgment motion on the merits, the motion to compel will be denied as moot. However, the Court finds that Plaintiff should be sanctioned under Federal Rule of Civil Procedure 37(d) for failing to attend her properly-noticed deposition on two different dates and for failing to keep defense counsel and the Court apprized of her whereabouts, current contact information, and her reasons for failing to cooperate in discovery. Plaintiff's "Notice of Temporary Absence" is not a proper pleading and did not serve to toll any deadlines in the case. Plaintiff will not be permitted to unilaterally disrupt the orderly progress of any case by filing such a "Notice." In any event, more than five (5) months have passed without any communication from Plaintiff.

The Court will require Plaintiff to pay to Defendant NBC **within thirty days** the sum of $147.10, which is the total charged by the court reporters on the two dates Plaintiff did not appear

13

(November 10, 2005, $97.10; November 29, 2005, $50.00.)

## IV. CONCLUSION

For all of the reasons stated, the Report and Recommendation of the Magistrate Judge (Docket Entry No. 19) will be rejected; Defendant's Motion for Summary Judgment (Docket Entry No. 13) will be granted; and Defendant's Motion to Compel Plaintiff to Appear at Deposition and For Sanctions (Docket Entry No. 9) will be granted in part and denied in part. Plaintiff shall pay Rule 37 sanctions to Defendant NBC in the amount of $147.10.

An appropriate Order shall be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE